## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

ANTHONY FALBO,

Plaintiff,

v.

POUDRE FIRE AUTHORITY,
Ft. Collins, Colorado; and,

POUDRE VALLEY FIRE
PROTECTION DISTRICT,

Defendants.

---

## COMPLAINT FOR DAMAGES AND JURY DEMAND

---

## INTRODUCTION

1.     This civil rights action is for monetary and other appropriate relief necessary to redress Defendants' violations of the Americans with Disabilities Act ("ADA") as amended by the ADA Amendments Act ("ADAAA") (collectively, the "ADA") seeks to vindicate Anthony Falbo's rights for ADA violations by Poudre Fire Authority and Poudre Valley Fire Protection District (collectively "Defendants" or "PFA").

2.     Defendants hired Anthony Falbo (also, "Plaintiff" or "Mr. Falbo") as a firefighter in August 2006.

3.     During his tenure with PFA, Mr. Falbo ascended to the rank of Captain, which was later re-classified to Lieutenant as part of a set of changes instituted throughout PFA.

4.      Mr. Falbo received extremely positive performance evaluations at each juncture that they were offered during his tenure with PFA.

5.      In 2015, Mr. Falbo also received the PFA Lifesaving Award to recognize that he saved a life during his work at PFA.

6.      In March 2022, Mr. Falbo got an off-duty DUI, which he immediately reported up the chain of command, as he was required to do.

7.      Defendants Poudre Fire Authority and Poudre Valley Fire Protection District are jointly responsible for the operation of PFA. Employees are subject to the governing authority of PFA, and PFA and its employees are subject to a collective bargaining agreement and various related policies.

8.      This case is being brought because the Defendants knowingly and willfully, and in bad faith, carried out a campaign of violation of protections afforded under the ADA, including retaliation with dire consequences for Anthony Falbo as a function of their standard practice, custom or habit, as evidenced by, *inter alia*, the numerous upper-level employees participating in the illegal activities and using the CBA to support their actions.

**PARTIES**

9.      Plaintiff Anthony Falbo is a sixteen-year veteran of Poudre Fire Authority who resides in Bellvue, Colorado.

10.     Defendants are Poudre Fire Authority and the Poudre Valley Fire Protection District (collectively Defendants or "PFA").

11.     Upon information and belief, Defendant Poudre Fire Authority is a public entity established in 1981 through an intergovernmental agreement between Poudre Valley Fire

Protection District and the City of Fort Collins to provide fire and rescue services within their service areas, and is authorized by the Colorado State Legislature.

12.     Upon information and belief, Poudre Valley Fire Protection District is a public entity established in 1950 and authorized by the Colorado State Legislature, and its board of directors governs Poudre Fire Authority.

13.     The intergovernmental agreements that established Poudre Fire Authority and Poudre Valley Fire Protection District permit them to sue and be sued.

14.     This is not a *respondeat superior* case.

## JURISDICTION AND VENUE

15.     This action arises under the Americans with Disabilities Act, § 2 et seq., 42 U.S.C. § 12101 et seq., § 12102 et seq., and 42 U.S.C. 12203.

16.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331.

17.     The Court has the authority to provide permanent injunctive relief pursuant to Federal Rules of Civil Procedure 65.

18.     Venue lies in the United States District Court for the District of Colorado because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Larimer County, Colorado. 28 U.S.C. § 1391(b).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

19.     Mr. Falbo exhausted administrative remedies by filing a Charge of Discrimination with EEOC on October 4, 2023 and received a notice of right to sue letter on October 31, 2023.

20.     The EEOC right to sue lasts through January 29, 2023.

21.     Mr. Falbo exhausted administrative remedies through the Poudre Fire Authority Collective Bargaining Agreement ("CBA") until shortly after it was discovered that not only were key division chiefs involved in illegal employment actions against Mr. Falbo, but even the

Fire Chief, Derek Bergsten, was involved in orchestrating the unlawful termination of Anthony Falbo one month prior to that termination and because in June 2023, he attempted to alter key evidence of Mr. Falbo's last performance evaluation, which is stored and monitored by a computer software program, ImageTrend, that logs all activity of PFA records stored there and which a response to a CORA request revealed he had attempted to alter.

22.     Mr. Falbo availed himself of all administrative steps in the CBA until shortly after the revelation about Fire Chief Derek Bergsten attempting to tamper with the record of his performance evaluation, at which point it was clear beyond a reasonable doubt that further administrative review would be futile because the PFA appeal process provides that the Fire Chief (Derek Bergsten) gets the final say in decisions reached by the division chief(s) on appeals.

23.     Additionally, administrative exhaustion under the CBA would be futile because the CBA, which comprises the structural and systemic framework of PFA procedures is the document that multiple PFA employees used to support the illegal actions that give rise to this case. Mr. Falbo seeks systemwide reforms as a result of his experiences with disciplinary actions under the CBA.

24.     Because of Fire Chief Derek Bergsten's malfeasance and that of Division Chief Brandon Garcia and Battalion Chief Dustin DeBaere, it is clear beyond a reasonable doubt that further administrative review by the agency would be futile because the agency will not provide the relief requested. For, to do so would require the agency to admit its bad acts in violation of the law and of the CBA. Additionally, the issues presented here exceed PFA's ability to address, further removing this matter from the purview of the PFA administrative apparatus and making administrative exhaustion within PFA all the more futile.

## FACTUAL ALLEGATIONS

**The History**

25.      In August 2006, Anthony Falbo was hired by PFA as a recruit.

26.      Upon successful completion of his first year with PFA, Mr. Falbo was graduated to firefighter.

27.      In or around October 2010, Mr. Falbo continued to enjoy success as a PFA firefighter and earned the position of driver/operator.

28.      Mr. Falbo was widely regarded within his Station and throughout PFA as an excellent firefighter and often received positive feedback about his work from his superiors and peers.

29.      In 2015, Mr. Falbo received the Life Saving award due to actions he took on a call.

30.      In 2014, PFA instituted annual performance evaluations to be completed in December of each year. Mr. Falbo's performance evaluations, including the 2021 and 2022 iterations, were always positive, showing that he was well qualified for the work he performed.

31.      In November 2018, Mr. Falbo was promoted to Captain and continued to receive positive performance evaluations.

32.      On March 17, 2022, Mr. Falbo was off-duty and driving home during his vacation when he received a DUI upon being pulled over in Fort Collins, Colorado for a taillight that was out.

33.      On March 18, 2022, as per PFA Administrative Policy 7, Mr. Falbo reported the DUI to his supervisor.

34.      On or about March 29, 2022, PFA placed Mr. Falbo on administrative leave. Mr. Falbo remained on administrative leave until January 12, 2023.

35.     Shortly thereafter, PFA began an administrative investigation of the incident.

36.     On April 20, 2022, Mr. Falbo was interviewed by an independent investigator who was conducting the administrative investigation on behalf of PFA.

37.     In April 2022, Mr. Falbo initiated and participated in weekly therapy through Alcohol Counseling and Guidance Services through January 2023. The therapy has two tracks. Mr. Falbo completed the first track July 18, 2022 and moved into the second track August 8, 2022, which he completed in January 2023. PFA was fully aware of Mr. Falbo's participation in the ACGS programs.

38.     Mr. Falbo began seeking an appropriate alcohol treatment program in April 2022.

39.     Mr. Falbo found an out-of-state alcohol treatment program with an emphasis on treatment of first responders.

40.     On or about June 6, 2022, Mr. Falbo traveled to the treatment facility. He successfully completed the full 30-day treatment program on or about July 7, 2022.

41.     After successful completion of his alcohol treatment program, Mr. Falbo returned to Colorado on July 8, 2022 and to his employment at PFA on July 25, 2022 as per his treatment facility's recommendation regarding his fit-to-return-to-duty date.

**The Garcia Recommendation**

42.     On July 20, 2022 Division Chief of Operations, Brandon Garcia, completed his Investigation Summary and Notice of Recommended Discipline ("Garcia Recommendation").

43.     The Garcia Recommendation points to various provisions of the CBA to support the notion that by getting a DUI, Mr. Falbo had violated the CBA and was therefore properly subject to discipline.

44. The Garcia Recommendation includes recommendations for the imposition of various, discipline that purported to require Mr. Falbo to supply PFA with protected health information from his treatment facility. Among the recommended discipline were the following forms of discipline:

> 1) Comply with any treatment and counseling recommendations from your alcohol abuse treatment program, a copy of which recommendations shall be provided to the Fire Authority;

> 2) Provide monthly reports from your counselor(s) regarding your continuation of treatment and compliance with counselor recommendations for at least a six (6) month period beginning September 1, which period may be extended by the Authority, in its sole discretion. You must sign and return to PFA an Authorization for Release of protected health information, which authorizes your counselor(s) to provide the Authority with the monthly reports;

45. The Garcia Recommendation was followed by a document entitled Decision to Impose Discipline (the "Original Discipline"), which purports to have been "From" Division Chief Jerry Howell, but which is not signed by him and which, upon information and belief, is not entirely his work.

46. The Garcia Recommendation that Mr. Falbo comply with treatment and counseling recommendations from his alcohol abuse treatment program and that he provide a copy of those recommendations to PFA reveals that PFA regarded Mr. Falbo as disabled.

47. The Garcia Recommendation that Mr. Falbo provide monthly reports from his counselor(s) regarding his continuation of treatment and compliance with counselor recommendations for at least a six (6) month period beginning September 1, which period may be extended by the Authority, in its sole discretion, reveals that PFA regarded Mr. Falbo as disabled.

48.     The Garcia Recommendation that Mr. Falbo sign and return to PFA an Authorization for Release of protected health information, which authorized his counselor(s) to provide the Authority with the monthly reports reveals that PFA regarded Mr. Falbo as disabled.

**Discipline Imposed**

49.     The Original Discipline imposed the following discipline:

• Demotion to Firefighter

• Removal from the Captain eligibility list

• Be placed on unpaid leave suspension until your driver's license is reinstated with no restrictions

Additionally, you shall:

1. Comply with any treatment and counseling recommendations from your alcohol abuse treatment program, a copy of those recommendations shall be provided to the Authority.

2. Provide monthly reports from your counselor(s) regarding your continuation of treatment and compliance the counselor(s) recommendations for one (1) year beginning September 1, 2022. This period may be extended by the Authority in its sole discretion. You must sign and return to PFA an Authorization for Release of protected health Information, which authorizes your counselor(s) to provide the Authority with monthly reports.

3. Submit to drug and alcohol testing directed by PFA once every month for at least a one (1) year period commencing on the first day you return to work as a firefighter, which period may be extended by the Authority, in its sole discretion.

(Emphasis added.)

50.     PFA never asked Mr. Falbo to enter into a "last chance" agreement, and no "last chance" agreement was ever entered into between Plaintiff Falbo and Defendants.

51.     PFA nevertheless imposed the requirement of Mr. Falbo providing medical and therapeutic records as a form of discipline, which is prohibited under the Americans with Disabilities Act Amendments Act and Tenth Circuit case law construing it.

**The Appeal**

52.     On or about August 19, 2022, Mr. Falbo appealed the discipline imposed by PFA.

53.     On September 20, the appeal was decided in Mr. Falbo's favor by Chief Vander Velde. Chief Vander Velde's decision on appeal ("Discipline Decision") modified the Original Discipline decision that was imposed under the name Chief Jerry Howell in several ways, including by the elimination the requirement to provide monthly reports from counselors regarding the continuation of treatment and compliance with counselor(s) recommendations for one year, which PFA could, in its sole discretion, extend:

- 30-day suspension without pay. Dates to be determined by Chief Vander Velde. You will not accumulate seniority during the suspension.

- Demotion to Firefighter II A until your driver's license is reinstated to a status without restriction due to the DUI. Stay in a 40-hour assignment during the demotion. At the time your driver's license is reinstated you will move to Lieutenant B pay, with one year probation and must complete the Lieutenant Task Book. However, if your driver's license is restricted for one year or more from July 27th, 2022:

  a. the demotion to firefighter will stand, and you will not be reinstated to the rank of Lieutenant;

  b. you will have to test for any promoted position; and

  c. you will have to meet and maintain all firefighter II A requirements and expectations. When your license is reinstated and you return to a 56-hour work position, your placement will be at the discretion of the Operations Chief.

- Removal from the current Captain's eligibility list and not able to participate in the next testing cycle for Captain.

- Random, on-duty drug and alcohol testing for a three-year period. Testing will be conducted in accordance with Federal Motor Carriers Safety Association (FMCSA) processes. For the purposes of random testing, "on-duty" means your regular working days and any sick leave you take. Other types of leave will not be

considered as "on-duty". (Example; vacation, emergency leave, jury duty, etc.)

- Comply with any treatment and/or counseling recommendations from your alcohol abuse treatment program. You will take such actions as are necessary for the program to release a copy of these recommendations to the PFA.

Any violation of or non-compliance with the above discipline and requirements will result in discipline, up to and including termination of your employment.

(Emphasis added.)

54.    The Discipline Decision is the governing disciplinary document with regard to Mr. Falbo's discipline in connection with the Americans with Disabilities Act.

55.    The Discipline Decision eliminated some onerous requirements and required his compliance with treatment and/or counseling recommendations, but it did not require Mr. Falbo to provide verification of the requirement.

56.    The elimination of the requirement to provide verification of compliance with treatment and counseling recommendations was intentional by Chief Vander Velde.

57.    The Discipline Decision retained the requirement that Mr. Falbo comply with any treatment and/or counseling recommendations from his alcohol abuse treatment program.

58.    The requirement that Mr. Falbo comply with any treatment and/or counseling recommendations from his alcohol abuse treatment program demonstrates that PFA regarded Mr. Falbo as being disabled.

59.    The Discipline Decision retained the requirement that Mr. Falbo take such actions as are necessary for the program to release a copy of its recommendations to PFA. This demonstrates that PFA regarded Mr. Falbo as being disabled.

60.     This requirement was aimed at making it possible for PFA to know the treatment and/or counseling recommendations of his alcohol abuse treatment program so that PFA could then ascertain whether he had complied with it.

61.     The Discipline Decision eliminated the requirement that Mr. Falbo provide monthly reports from his counselor(s) regarding his continuation of treatment and compliance with their recommendations for one year, and it eliminated the threat that the period may be extended by the Authority in its sole discretion.

62.     PFA's retention of the requirement that Mr. Falbo release the recommendations of his therapists and counselors to PFA demonstrates that PFA regarded Mr. Falbo as disabled.

63.     Throughout his administrative leave, Mr. Falbo worked non-firefighting jobs.

**The Return**

64.     On October 31, 2022, Battalion Chief Bob Root issued a memorandum under the subject line, "Return from Unpaid Suspension" ("Return Memorandum").

65.     Chief Root's Return Memorandum was "provided to clarify conditions and expectations related to your return from disciplinary suspension."

66.     The Return Memorandum sets forth the day-to-day particulars of Mr. Falbo's return from disciplinary suspension and administrative leave, as well as the possibility of his reinstatement, which the Return Memorandum indicated depended upon Mr. Falbo's compliance with its terms.

67.     In addition to the day-to-day particulars, the Return Memorandum notably required that Mr. Falbo comply with on-duty drug and alcohol testing for three years. This is further evidence that PFA regarded Mr. Falbo as being disabled.

68.     The Return Memorandum also required Mr. Falbo to "continue to comply with any treatment and/or counseling recommendations from your alcohol abuse treatment program."

69.     The Return Memorandum went two steps further in its disciplinary requirements than the Original Discipline or the Discipline Decision had gone. For, the Return Memorandum required Mr. Falbo to "take such actions as are necessary for the program(s) to provide verification of continued compliance as requested." Thus, it purported to require Mr. Falbo to enable PFA to obtain protected health information in the form of ongoing updates regarding Mr. Falbo's treatment progress. This requirement demonstrates that PFA regarded Mr. Falbo as disabled.

70.     The Return Memorandum went a step further than previous disciplinary documents from PFA, however. It required Mr. Falbo to "immediately notify [Chief Root] and Janet Miller in HR of any changes in or discontinuation of your treatment plan(s)." This requirement demonstrates that PFA regarded Mr. Falbo as disabled.

71.     Immediately following the section on requirements that Mr. Falbo provide his protected health information in connection with what PFA regarded as his disability, the Return Memorandum states, "Any violation of or non-compliance with the above discipline and requirements will result in discipline, up to and including termination of your employment." Thus, PFA communicated that Mr. Falbo might be fired for failing to comply with its punitive framework that it designed to discriminate against him due to his disability.

72.     On January 11, 2023, Mr. Falbo provided PFA with a copy of his temporary driver's license showing removal of restrictions associated with the DUI. This prompted Division Chief Vander Velde to draft and send a memo under the subject line, "Discipline Update and Reminder Notice of Administrative Investigation" ("Discipline Update").

73.     The Discipline Update indicates that effective January 23, 2023, Mr. Falbo would be moved from Firefighter II A to Lieutenant B and would be placed on probation through January 22, 2024.

74.     The Discipline Update also provides that beginning January 12, 2023 (immediately), Mr. Falbo was permitted to drive for PFA business.

75.     The Discipline Update reiterates that pursuant to the Discipline Decision, the requirements that Mr. Falbo comply "with any treatment and/or counselling recommendations from [his] alcohol abuse treatment program; and taking action necessary for those programs to release recommendations to the PFA, remain in effect." This demonstrates that PFA regarded Mr. Falbo as disabled.

76.     Mr. Falbo was excited to receive the Discipline Update because it represented what he thought was a significant turning point in his employment with PFA. He could see the light at the end of the tunnel, and he was determined to come out of the experience a better employee, a better firefighter, and a better man.

**The Termination**

77.     On February 13, 2023, much to Mr. Falbo's shock and dismay, Battalion Chief Dustin DeBaere issued a memorandum under the subject, "Investigation Summary and Notice of Recommended Discipline" ("Recommended Discipline").

78.     The Recommended Discipline memo indicates that it addresses the Discipline Decision directive: "'Comply with any treatment and/ or counseling recommendations from your alcohol abuse treatment program. You will take such actions as are necessary for the program to release a copy of these recommendations to the PFA.' The 9/20/22 Disciplinary Decision also made clear 'Any violation of or non-compliance with the above discipline and requirements will result in discipline, up to and including termination of your employment.'"

79.    The Recommended Discipline continues, "Upon Mr. Falbo's discharge from treatment, [the treatment facility] provided him with 'Aftercare Appointments & Recommendations.' Mr. Falbo's compliance with the 9/20/2022 Disciplinary Decision's directives is at issue, which is tantamount to 'insubordination or refusing to comply with a directive' as stated in Article 52 of the CBA." PFA's continued insistence that Mr. Falbo comply with "Aftercare Appointments & Recommendations" demonstrates that PFA regarded Mr. Falbo as disabled.

80.    The Recommended Discipline then discusses a minor issue about hours worked and associated documentation that arose in during with Mr. Falbo's administrative leave work assignment at the warehouse and which was resolved virtually immediately through a conversation with Chief Root and Chief Vander Velde. Recommended Discipline indicates that Mr. Falbo worked too much without providing proper documentation to his superiors. However, Mr. Falbo had frequently provided documentation of his work hours to Chief Garcia. Chief Garcia could have raised the issue immediately in April 2022 when Mr. Falbo started working on administrative leave.

81.    Chief Garcia had received notice of Mr. Falbo working additional hours, but did not mention, the issue. It was ultimately raised by Chief Root. Nevertheless, the issue was re-raised in Chief DeBaere's Recommended Discipline.

82.    In his Recommended Discipline, Chief DeBaere asserts that in making his recommendations, he reviewed a number of documents, including "Mr. Falbo's personnel file and performance evaluations." However, PFA was unable to produce all of Mr. Falbo's performance evaluations in response to a CORA request in the spring of 2023. Missing were Mr. Falbo's 2015, 2019, and 2022 performance evaluations. PFA eventually located and produced

Mr. Falbo's 2019 and 2022 performance evaluations, but it apparently never located his 2015 performance evaluation.

83.     In response to a CORA request on June 10, 2023, PFA produced documentation from PFA's cloud-based document control software, ImageTrend, revealing that on December 7, 2022, Mr. Falbo's 2022 performance evaluation was completed and locked so that it could not be altered unless unlocked and placed into "Draft" status by an authorized user. Further, between December 7, 2022 and June 9, 2023, Mr. Falbo's 2022 performance evaluation, which is arguably the most relevant performance evaluation given that it occurred during the year that his DUI and administrative leave, and other discipline took place, was not accessed by anyone. The 2022 performance evaluation also was never printed.

84.     According to ImageTrend records, on June 9, 2023, Fire Chief Derek Bergsten accessed Mr. Falbo's 2022 performance evaluation and changed it to "Draft" status. This shows that Fire Chief Bergsten desired that the document be altered somehow. However, he did not alter it—possibly because he realized that his changes would be evident and that Mr. Falbo had already made several CORA requests for related documents.

85.     The same PFA CORA response documents reveal that Mr. Falbo's 2022 performance evaluation was never accessed in ImageTrend by Chief DeBaere.

86.     So, it is evident that when he claimed that in considering his Recommended Discipline, Chief DeBaere reviewed "Mr. Falbo's personnel file and performance evaluations," he was lying.

87.     Chief DeBaere's lie about having reviewed Mr. Falbo's performance evaluations calls into question whether he looked at any documents in producing his Recommended Discipline. It also calls into question whether Chief DeBaere reached a conclusion before he

embarked on his project to help Operations Chief Brandon Garcia terminate Anthony Falbo. Chief DeBaere's lies appear to betray the pretextual termination for which they were generated.

88.     The Recommended Discipline underscores the report issued by the independent investigator, quoting the following:

> Mr. Falbo followed some of [the treatment facility's] recommendations and not others. Mr. Falbo provides few persuasive explanations for his lack of compliance with [the treatment facility's] Discharge Summary recommendations. Mr. Falbo relies heavily and inexplicably on his asserted understanding that he need only comply with the recommendation that he participate in weekly therapy with [his therapist].[2] Mr. Falbo also contends that because several of [the treatment facility's] Discharge Summary recommendations are identified as "PRN" or as needed, he need not have followed them.

> In this, Mr. Falbo disregards the 9/20/2022 Disciplinary Decision which directs Mr. Falbo to "comply with any treatment and/or counseling recommendations from [his] alcohol abuse treatment program." In some instances, Mr. Falbo followed [the treatment facility's] recommendations.

> Where he has complied with the aftercare appointments and recommendations, he has not provided documentation of the same, Mr. Falbo provides similarly unpersuasive explanations for not doing so.

89.     The Recommended Discipline uses this excerpt from the independent investigation to support the recommendation of termination of Captain Anthony Falbo from PFA.

90.     The Recommended Discipline states that Mr. Falbo had the opportunity to "step up" and comply with the requirement that he provide PFA with his private, protected health information and that he did not do so.

91.     The Recommended Discipline goes on to assert that "[a]t the time of the investigation, Mr. Falbo had not adhered to the following recommendations from the [treatment facility] for aftercare as was required in his 9/20/22 Disciplinary Decision:"

- Mr. Falbo did not see a psychiatrist as recommended.

- Mr. Falbo did not receive weekly therapy from his therapist as recommended.

- Mr. Falbo did not attend an FRSG group as recommended.

- Mr. Falbo did not attend [the treatment facility's] Alumni AA as recommended.

Mr. Falbo did not perform the following as directed in his 9/20/2022 Disciplinary Decision:

- Mr. Falbo did not provide documentation to PFA prior to 11/1/2022 regarding his aftercare appointment with a physician as directed in his Discipline.

- Mr. Falbo did not provide documentation to PFA prior to 11/1/2022 regarding his participation in Vidara which was a recommendation of the [the treatment facility].

92.     The Recommended Discipline falsely states that Mr. Falbo failed to comply with Chief Vander Velde's Discipline Decision by failing to see a psychiatrist, as recommended by the treatment facility for aftercare. The treatment facility's aftercare recommendations contain no such requirement.

93.     The Recommended Discipline falsely states that Mr. Falbo failed to comply with Chief Vander Velde's Discipline Decision by failing to receive weekly therapy from his therapist, as recommended by the treatment facility for aftercare. The treatment facility's aftercare recommendations contain no such requirement.

94.     The Recommended Discipline falsely states that Mr. Falbo failed to comply with Chief Vander Velde's Discipline Decision by failing to attend [the treatment facility's] Alumni AA, as recommended by the treatment facility for aftercare. The treatment facility's aftercare recommendations contain no such requirement.

95.     The Recommended Discipline falsely states that Mr. Falbo failed to comply with Chief Vander Velde's Discipline Decision by failing to provide documentation to PFA prior to

11/1/2022 regarding his aftercare appointment with a physician as directed in his Discipline Decision. Chief Vander Velde's Discipline Decision had no such requirement that Mr. Falbo provide documentation to PFA regarding his aftercare appointment with a physician. The treatment facility's aftercare recommendations contain no such requirement.

96.    Mr. Falbo complied with the Discipline Decision by Chief Vander Velde in that he provided a release to PFA regarding his treatment program records.  Mr. Falbo fulfilled this requirement in early June 2022 and two other times, including between September 20, 2022 and November 1, 2023.

97.    On March 9, 2023, Operations Chief, Brandon Garcia, provided a memo like Battalion Chief Dustin DeBaere had done under the subject, "Investigation Summary and Notice of Recommended Discipline" ("Termination Letter"). The subject was deceiving, however. Operations Chief Brandon Garcia's memo actually terminated Anthony Falbo's employment with PFA.

98.    Chief Garcia's March 9, 2023 ("Termination Letter") follows the same basic pattern as Chief DeBaere's Recommended Discipline. Both falsely assert noncompliance by Mr. Falbo regarding his treatment plan, both falsely assert that Mr. Falbo failed to provide access to his treatment recommendations and progress, and both falsely assert that they reviewed his performance evaluations in considering the action that they would take.

99.    Chief Garcia's Termination Letter even went so far as to indicate that Mr. Falbo's termination is partially predicated upon his failure to submit EMDR records.

100.    The Termination Letter (and Chief DeBaere's Recommended Discipline) circumvents and subverts, to Mr. Falbo's great detriment, Chief Vander Velde's Discipline

Decision of September 20, 2022, which is the governing disciplinary document regarding discipline for Mr. Falbo's DUI.

101.    The Termination Letter points out that Mr. Falbo, upon discharge from the inpatient treatment facility, was provided with a document entitled "Aftercare Appointments & Recommendations." Yet, the Termination Letter asserts that Mr. Falbo had not provided PFA with documentation of recommendations by the treatment facility.

102.    The Termination Letter eagerly adopts the investigator's flawed logic that because some of the treatment facility's discharge recommendations are to be undertaken only as needed, Mr. Falbo was required to undertake all of them always.

103.    The Termination Letter asserts that "Mr. Falbo did not provide documentation to PFA prior to 11/1/2022 regarding his aftercare appointment with a physician as directed in his Discipline." The Termination Letter ignores that a physician appointment was recommended for aftercare only as needed—apparently because PFA wanted to use it against Mr. Falbo in the course of its discrimination campaign.

104.    The Termination Letter contends that Mr. Falbo did not provide documentation to PFA prior to 11/1/2022 regarding his participation in Videra, which was recommended by the treatment facility. Videra is neither treatment nor counseling. No requirement of Videra participation was imposed by the treatment facility, and no requirement of documentation of Videra participation was imposed by the September 20, 2022 Discipline Decision or any other PFA directive. Even so, Mr. Falbo took such actions as were necessary for the program (the treatment facility) to release a copy of the recommendations to PFA.

105.    The Termination Letter cites various, minor, contested issues as evidence to support termination, but the primary evidence is associated with discrimination in connection with the PFA regarding Mr. Falbo as disabled.

106.    The Termination letter points to a single instance in 16 years of Mr. Falbo violating a PFA rule and concludes that a "pattern of failure to follow policy continues." The Termination Letter willfully ignores 16 years of success and consistently overwhelmingly positive performance evaluations, at least some of which were not reviewed or considered in the disciplinary decision.

107.    Mr. Falbo's employment was terminated as of April 3, 2023.

108.    Mr. Falbo complied fully with his treatment program.

109.    Mr. Falbo repeatedly provided PFA with access to his protected health information related to his treatment program.

110.    Mr. Falbo's treatment program ended on July 7, 2022 upon his successful completion of it.

111.    At no time did PFA or anyone else accuse Mr. Falbo of not being able to perform the essential functions of his job.

**The Aftermath**

112.    Following his termination from PFA, Mr. Falbo made a series of CORA requests for information related to his employment and his termination.

113.    The CORA responsive documents revealed that Fire Chief Derek Bergsten, whose role in discipline is defined in CBA Article 54, Section 6(H), had inserted himself into the process in mid-February by providing guidance, including questions to pose, to Operations Chief Brandon Garcia. The questions that Fire Chief Bergsten suggested, and the concepts that they

embody, appeared in the Termination Letter. This shows beyond a reasonable doubt that administrative exhaustion within PFA was always futile.

## COUNTS

### COUNT I – Violation of the Americans with Disabilities Act and the Americans with Disabilities Act Amendments Act

**(Employment Discrimination—Termination Because of Disability)**

114.    Plaintiff incorporates the preceding allegations as if set forth here in full.

115.    PFA is a covered entity under the ADA.

116.    Mr. Falbo worked for PFA from 2006 until 2023 when he was discharged due to his disability.

117.    Mr. Falbo is qualified to, and capable of, performing the essential functions of the job as a captain/lieutenant at PFA, as well as all jobs that fell under his command as captain/lieutenant with or without disability-related accommodations.

118.    PFA mistakenly believed that an actual, nonlimiting impairment substantially limited one or more of Mr. Falbo's major life activities. Namely, PFA mistakenly believed that Mr. Falbo's ability to work was limited by an alcohol addiction.

119.    Mr. Falbo was discriminated against because he was regarded as disabled by PFA.

120.    PFA unlawfully demanded that Mr. Falbo provide protected health information (PHI) and then punished him based on its allegation that he failed to timely comply.

121.    PFA pointed to minor employment-related issues that arose during Mr. Falbo's administrative leave and tried to make Mr. Falbo's termination appear as though it was substantially for reasons other than that it regarded Mr. Falbo as disabled. The other alleged bases for termination were pretextual.

122.    Plaintiff was harmed by the discrimination he suffered at the hands of PFA.

## COUNT II–ADA Retaliation

**(Adverse employment action against Mr. Falbo for engaging in protected activity.)**

123.    Plaintiff incorporates the preceding allegations as if set forth here in full.

124.    Mr. Falbo availed himself of the provisions within the PFA Collective Bargaining Agreement to challenge the adverse employment actions against him.

125.    Mr. Falbo's opposition to the adverse employment actions against him included opposition to the requirement that he take such actions as are necessary for the program to release a copy of the treatment and/or counseling recommendations to PFA. In short, PFA demanded the release of Mr. Falbo's protected health information, and PFA concluded that Mr. Falbo had not complied. So, PFA retaliated against him by instituting disciplinary action.

126.    The law protects the medical and health information of employees who are regarded as disabled and does not permit employers to demand it or to condition continued employment on the provision of protected health information related to disability in the absence of a "last chance" agreement between the employer and the employee.

127.    The PFA requirement that Mr. Falbo release his protected health information opposition was discriminatory.

128.    Mr. Falbo availed himself of the administrative process to oppose the adverse action taken against him by PFA in the form of the Discipline Decision handed down by Chief Rick Vander Velde on September 20, 2022.

129.    Availing oneself of the administrative processes available to resolve employment disputes is a protected act under the law.

130.    PFA took further adverse action against Mr. Falbo in response to his administrative appeal of the Discipline Decision.

131.    PFA neither sought nor obtained a "last chance" or "return to work" agreement from Mr. Falbo.

132.    Mr. Falbo's opposition to the PFA requirement to release his protected health information is protected activity.

133.    Mr. Falbo was terminated in retaliation for his alleged failure to provide protected health information.

134.    Mr. Falbo's termination constitutes an adverse employment action within the meaning of that term under the ADA and ADAAA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this honorable Court enter judgment in his favor and provide the following relief:

A.    Back pay for pay Mr. Falbo would have received up to the time of a court award but for the Defendants' illegal actions.

B.    Injunctive relief to include job reinstatement with full benefits, including retirement plan contributions and increases, pay increases, and rank and seniority retention pursuant to Federal Rules of Civil Procedure 65.

C.    Restoration of vacation days, including days that would have accrued but for the improper acts of PFA, as well as other forms of compensation and/or pay that would have accrued.

D.    Alternatively, front pay to compensate  Mr. Falbo for pay he would have received after the date of a court award but for the Defendants' illegal actions.

E.    Compensatory damages to compensate Mr. Falbo for injuries sustained and/or to replace losses caused by Defendants' wrongful actions, including damages for emotional distress in connection with those actions.

F.      Punitive damages to punish the employer for wrongful conduct that was willfully and/or recklessly undertaken in violation of Mr. Falbo's federally protected rights, for the loss of enjoyment of life, for mental anguish, and to deter the employer and others from similar misconduct.

G.      Pre- and post-judgment interest as part of damages awarded to Mr. Falbo. Parties to a settlement agreement may also agree to add interest to a settlement amount, depending on the length of time it takes to settle the dispute.

H.      Systemwide reform of PFA procedures as they related to disciplinary measures, including the replacement of the CBA provision that gives the Fire Chief final authority in deciding appeals in which his bad acts or those of his immediate subordinates may be at issue.

I.      Attorney fees and costs as allowable under the ADA, the ADAAA, or other applicable law.

J.      Such affirmative action as may be appropriate.

K.      Any other equitable relief as the court deems appropriate.

Respectfully submitted this 29th day of January 2024

ILLUMINE LEGAL LLC

_/s/ J. Brad Bergford_
J. Brad Bergford, CO Bar no. 42942
8055 E. Tufts Ave., Ste. 1350
Denver, CO 80237
Phone: 303.228.2241
Email: brad@illuminelegal.com
Attorney for Plaintiff

**CERTIFICATE OF COMPLIANCE**

This pleading complies with the applicable format requirement set forth in D.C.COLO.LCivR 10.1, FORMAT OF PLEADINGS AND DOCUMENTS PRESENTED FOR FILING.

**CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System. Defendants have not yet been (but will soon be) served pursuant to Rule 4.

*/s/ J. Brad Bergford*
J. Brad Bergford